CHARLES H. TOUZALIN AGENCY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11540.    Promulgated April 30, 1927.

Personal service classification denied.

*Lewis K. Torbet, Esq.*, for the petitioner.
*L. L. Hight, Esq.*, for the respondent.

This proceeding is for the redetermination of deficiencies in income and profits taxes for 1919, 1920, and 1921 amounting in the aggregate to $6,324.34. The deficiencies arise from the refusal of the respondent to grant personal service classification to the petitioner.

### FINDINGS OF FACT.

The petitioner was incorporated in 1911 under the laws of Illinois with its principal office located in Chicago.

Prior to the incorporation of the petitioner, Charles H. Touzalin was employed for many years as an advertising solicitor by the firm of Lord & Thomas. In 1911 Lord & Thomas announced a change in its business policy whereby accounts under $10,000 a year were to be discontinued. Touzalin decided to start an agency of his own using the discarded business of Lord & Thomas as a nucleus. The severance of his relations with Lord & Thomas was very amicable and for a period of about six months the general impression existed that Touzalin Agency was owned by Lord & Thomas. Touzalin took with him approximately $300,000 of advertising business.

Upon incorporating Touzalin paid in $5,000 cash and was issued $10,000 of the capital stock. One, Westman, paid cash for $5,000 of the capital stock and the remaining $5,000 was held as treasury stock. Shortly after the incorporation, a friend of Westman's took $5,000 of the stock paying for the same with a promissory note. Touzalin got back this stock by threatening the holder and by paying him $200.

Thereafter, the accounts of an agency known as the National Agency were absorbed by the petitioner, and Paul Watson, one of its employees, was employed by the petitioner and given $500 of stock which was subsequently returned.

In 1916, William B. Swann became a stockholder of the petitioner, coming from the Mahin Agency, bringing with him a substantial amount of business. The outstanding stock during the years 1919, 1920, and 1921 was divided between Swann and Touzalin. Qualifying shares were held by Mrs. Charles H. Touzalin, Mrs. William B. Swann, and by the attorney of the petitioner.

Touzalin and Swann solicited most of the business. Solicitors were employed and brought in some profitable business but the losses on the bad accounts acquired through the solicitors more than wiped out the profit on the good.

Business was secured by approaching the prospect as an expert in the advertising field. The advertiser was sold the service and assistance of the agency in the preparation and presentation of his merchandise to the public. The agency helped select the advertising medium, prepared the copy, presented same for approval and cooperated with the advertiser in every way. Having contracted with

the advertiser for a certain amount of space, the agency then arranged with the publisher for the required space by a contract between itself and the publisher or advertising medium selected. The contract between the agency and the advertiser was made at the publisher's rates. The contract between the agency and the publisher allowed a commission to the agency which amounted to 15 per cent of the contract price. In addition to the commission the agency was allowed a 2 per cent cash discount if payment was made promptly. The agency gave this discount to the advertiser if the latter made prompt monthly settlements. In any event the agency paid for the space and secured the cash discount allowed by the publisher or advertising medium. Where the advertiser failed to make prompt monthly settlements, the agency retained the 2 per cent discount. The policy of the agency was to bill the advertiser for each month's business five days in advance of the due date. The publisher or advertising medium billed the agency for the space for which the latter had contracted. In 1921 the petitioner charged off $13,210.57 owing from advertisers.

### OPINION.

MORRIS: The petitioner is here seeking to be classified as a personal service corporation under the provisions of section 200 of the Revenue Act of 1918 and section 200 (5) of the Act of 1921. The definition of a personal service corporation provided in both acts is identical—

The term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor * * *.

This section provides three essential elements for classification as a personal service corporation, the lack of any one of which defeats such classification. From the meager evidence offered we are of the opinion that the petitioner is not entitled to be so classified. The evidence, such as we have, indicates that capital was a material income-producing factor. We do not know how much income was received or to whom it should be ascribed, or many other facts which are essential to the determination of the question involved.

Counsel for the petitioner on brief, submitted balance sheets, a table of stockholdings and shares held, the volume of business for each of the taxable years, and various additional facts which are quite material, but as to which there was no testimony.

*Judgment will be entered for the respondent.*